**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Molly Howatt, | No. CV-23-00308-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Molly Howatt ("Plaintiff") seeks judicial review of a decision by the Social Security Administration ("SSA") Commissioner (the "Commissioner") denying her application for Supplemental Security Disability Insurance ("SSDI") benefits under the Social Security Act, 42 U.S.C. § 301 *et seq.* (the "Act"). (Doc. 1). Plaintiff filed her Opening Brief (Doc. 11), the Commissioner filed a Response (Doc. 13), and Plaintiff filed a Reply (Doc. 14). Upon review of the briefs and the Administrative Record (Doc. 8 "AR"), the Court affirms the Administrative Law Judge's ("ALJ") November 23, 2021, decision (AR at 12–25).

**I.    Background**

On February 26, 2020, Plaintiff filed an application for SSDI benefits under Title II of the Act, alleging a disability onset date of June 1, 2019. (*Id.* at 15). Plaintiff was fifty years old at the time of her alleged onset date and has a high school education. (*Id.* at 34–25). Her past relevant work includes employment as a receptionist in a medical clinic. (*Id.* at 34). Plaintiff claims she is unable to work due to enlarged heart, possible lymphoma,

Sjogren's syndrome, hypothyroid, and residuals from radiation and chemo for breast cancer. (*Id*. at 61–62).

Plaintiff's claims were initially denied on August 7, 2020, and upon reconsideration on April 15, 2021. (*Id*. at 15). After holding a hearing, the ALJ issued an unfavorable decision on November 23, 2021, (AR at 12–25) (the "November Decision").

## II. The ALJ's Five Step Process

To be eligible for Social Security benefits, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The ALJ follows a five-step process[1] to determine whether a claimant is disabled under the Act:

> The five-step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in "substantial gainful activity" and considering the severity of the claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(i)–(ii). If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. *See id.* § 416.920(a)(4)(iii). If so, the claimant is considered disabled and benefits are awarded, ending the inquiry. *See id*. If the process continues beyond the third step, the fourth and fifth steps consider the claimant's "residual functional capacity"[2] in determining whether the claimant can still do past relevant work or make an adjustment to other work. *See id*. § 416.920(a)(4)(iv)–(v).

*Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013); *see also* 20 C.F.R. § 404.1520(a)–(g). If the ALJ determines no such work is available, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(v).

---

[1] The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

[2] A claimant's residual functional capacity is defined as their maximum ability to do physical and mental work activities on a sustained basis despite limitations from their impairments. *See* 20 C.F.R. §§ 404.1545(a), 404.1520(e), 416.920(e).

The ALJ's findings in the November Decision are as follows:

At step one, the ALJ found that Plaintiff met the insured status requirements of the Act on September 30, 2020, and that she has not engaged in substantial gainful activity since June 1, 2019, her alleged onset date. (AR. at 14). At step two, the ALJ found Plaintiff has the following severe impairments: coronary artery disease with abdominal aortic aneurysm, lymphadenopathy, and Sjogren's syndrome. (*Id*. at 18 (citing 20 C.F.R. § 416.920(c)). At step three, she determined Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. (*Id*. at 18–19).

At step four, the ALJ found Plaintiff had the residual functional capacity ("RFC") through her date last insured to perform sedentary work[3] "with no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps and stairs; and she would need to avoid exposure to workplace hazards such as heights and heavy machinery." (*Id*. at 19). In determining Plaintiff's RFC, the ALJ stated she "considered all [of Plaintiff's] symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 § C.F.R. 404.1529 and [Social Security Ruling] 16-3p." (*Id*.) The ALJ also considered the medical opinions and prior administrative medical findings in accordance with the requirements of 20 C.F.R. § 404.1520c. (*Id*.) Given her RFC assessment, the ALJ determined Plaintiff was capable of performing past relevant work as a receptionist and a medical secretary. (*Id*. at 24–25). The ALJ therefore did not reach step five and deemed Plaintiff not disabled from June 1, 2019, her alleged onset date, through September 30, 2020, her last date insured. (*Id*. at 25 (citing 20 C.F.R. § 404.1520(f)).

The SSA Appeals Council denied Plaintiff's request for review of the November Decision, thus adopting the Decision as the agency's final decision. (*Id.* at 1–

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a); 416.967(a).

3). This appeal followed. On February 20, 2023, Plaintiff filed a Complaint under 42 U.S.C. §§ 405(g), 1383(c)(3) requesting judicial review and reversal of the Commissioner's decision. (Doc. 1).

**III.    Standard of Review**

In determining whether to reverse a decision by an ALJ, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). "An ALJ's disability determination should be upheld unless it contains legal error or is not supported by substantial evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006)); 42 U.S.C. §§ 405(g), 1383(c)(3)). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Garrison*, 759 F.3d at 1009 (9th Cir. 2014) (internal citation omitted). To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

The ALJ is responsible for resolving conflicts, ambiguity, and determining credibility. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ must "set forth the reasoning behind its decisions in a way that allows for meaningful review." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). This is because district courts may only review those reasons the ALJ places on the record and cannot speculate what the ALJ's reasoning might have been based on other evidence available. *Bray v. Commissioner of Social Security Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require [the court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."). Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion

must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

"Harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains substantial evidence supporting the ALJ's decision, and the error does not affect the ultimate nondisability determination. *Id*. Typically, the claimant bears the burden of showing that an error is harmful. *Id*. at 1111 (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

**IV.   Discussion**

Plaintiff appeals the ALJ's decision rendering her not disabled from June 1, 2019, her alleged onset date, through September 30, 2020, her last date insured (the "Intervening Timeframe"). Plaintiff argues the ALJ's reasons for discounting her Sjogren syndrome[4] symptom testimony of fatigue and myalgia were unsupported for three reasons: (1) the ALJ's review of the medical record was selective and she did not adequately point to areas that were inconsistent with Plaintiff's claimed symptoms (Doc. 11 at 8–10); (2) the ALJ erred when relying on Plaintiff's treatment regimen (*id*. at 12–13); and (3) the ALJ erred when relying on Plaintiff's daily activities (*id*. at 9–12). As a result, Plaintiff contends the

---

[4] Sjogren's syndrome is considered under Listing 14.10. of 20 C.F.R. Part 404, Subpart P, Appendix 1:

> [] Sjogren's syndrome is an immune-mediated disorder of the exocrine glands. Involvement of the lacrimal and salivary glands is the hallmark feature, resulting in symptoms of dry eyes and dry mouth, and possible complications, such as corneal damage, blepharitis (eyelid inflammation), dysphagia (difficulty in swallowing), dental caries, and the inability to speak for extended periods of time. Involvement of the exocrine glands of the upper airways may result in persistent dry cough. [] Many other organ systems may be involved, including musculoskeletal (arthritis, myositis), respiratory (interstitial fibrosis), gastrointestinal (dysmotility, dysphagia, involuntary weight loss), genitourinary (interstitial cystitis, renal tubular acidosis), skin (purpura, vasculitis), neurologic (central nervous system disorders, cranial and peripheral neuropathies), mental (cognitive dysfunction, poor memory), and neoplastic (lymphoma). Severe fatigue and malaise are frequently reported. Sjögren's syndrome may be associated with other autoimmune disorders (for example, rheumatoid arthritis or SLE); usually the clinical features of the associated disorder predominate.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 14.10.

ALJ failed to account for the "total limiting effects" of the impairments caused by her Sjogren's syndrome in her RFC. (*Id*. at 4). The Commissioner disagrees, arguing the ALJ reasonably determined that Plaintiff's symptoms allowed her to perform a reduced range of sedentary work, and properly accounted for these limitations in the RFC. (Doc. 13 at 5).

The Court will set forth the applicable legal standards before turning to each of Plaintiff's arguments.

### A. Legal Standards

An ALJ must perform a two-step analysis when determining whether a claimant's testimony regarding subjective pain or symptoms is credible. *Lingenfelter*, 504 F.3d at 1035–1036 (9th Cir. 2007). First, the ALJ must determine whether Plaintiff presented objective medical evidence of an impairment that could reasonably be expected to produce the symptoms alleged. *Garrison*, 759 F.3d at 1014. "In this analysis, the claimant is not required to show 'that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.' " *Id*. (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). Second, if there is no evidence of malingering, the ALJ may reject the Plaintiff's symptom testimony only by giving specific, clear, and convincing reasons. *Id*. at 1015; *Brown-Hunter*, 806 F.3d at 488–89. "This is not an easy requirement to meet: 'The clear and convincing standard[5] is the most demanding required in Social Security cases.'" *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). "The standard isn't whether [the reviewing] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022)

To determine whether a claimant's testimony regarding the severity of her

---

[5] The Commissioner contends that the clear and convincing standard is inconsistent with the deferential substantial evidence standard set forth in 42 U.S.C. § 405(g) and agency regulations and rulings specifying the rationale its adjudicators should provide in support of their findings. (Doc. 13 at n.7). The Commissioner further states the issue need not be resolved in this case because "the ALJ's reasons suffice under any standard." (Id.) In any event, the Court will apply the clear and convincing standard according to binding Ninth Circuit case law.

symptoms is credible, an ALJ may consider the following:

    (1)    ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid;

    (2)    unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and

    (3)    the claimant's daily activities.

*Smolen*, 80 F.3d at 1284. An ALJ may also consider the claimant's work record, and the observations of treating and examining physicians and other third parties regarding "the nature, onset, duration and frequency of claimant's symptoms, and precipitating and aggravating factors, functional restrictions caused by the symptoms, and the claimant's daily activities." *Id.* "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014).

**B.    Plaintiff's Symptom Testimony**

At issue is Plaintiff's testimony that the fatigue and myalgia she experiences from her Sjogren's syndrome prevented her from working during the Intervening Timeframe. (Doc. 11 at 3). The ALJ summarized Plaintiff's relevant symptom testimony as follows:

> [Plaintiff] alleged her ability to lift is limited to maybe ten pounds because she does not have the strength to hold things for long; her ability to sit is limited to twenty minutes, but sitting for a long time affects her back (she acknowledged she is not being treated for back pain); and her ability to walk is limited to twenty minutes on a good day. She acknowledged she is able to do some chores, but stated she has to plan ahead due to fatigue. [Plaintiff] testified to dry eyes, which sometimes interferes with her activities, and for which she has to use eye drops or rest her eyes for ten minutes. She expects this would happen five or six times in a workday. With her fatigue, she feels she loses words and thoughts. Her memory and concentration are affected. Her hands get tired if she writes for more than a minute. The claimant alleged that if she were working a sit-down job, she would require rest breaks five or six times a day for fifteen minutes to half an hour.
>
> [Plaintiff] testified that she was exercising four or five hours in the gym in the fall of 2019, and hiking in the spring, summer, and fall, but began do less

>
> at the gym in the beginning of 2020. She still goes to the gym, but if she works out a couple days in a row, she cannot do much after that. [Plaintiff] also acknowledged taking two vacations in 2019, and going to Arizona a couple times last year (2020). Prior to that, she would go to the coast for a long weekend. [Plaintiff] testified she does not have side effects of medication.

(AR at 20). (*See also id*. at 44–54). The ALJ also considered third-party statements from Plaintiff's husband that she experienced "progressively worsening fatigue, unpredictable energy levels, and declining mobility. (*Id*. at 24 (citing Exh. 13E)).

At the first step of the symptom testimony analysis, the ALJ determined that "[Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms." (*Id*. at 20). However, at the second step, the ALJ concluded that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of her alleged symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (*Id*.) The ALJ particularly took issues with the extent of Plaintiff's claimed fatigue, stating that "[w]hile fatigue presents in the records as a 'major complaint,' the [Plaintiff's] statements regarding the severity of her symptoms do not suggest greater limitation than to the sedentary exertional level." (*Id*. at 20–21).

Plaintiff argues her testimony described greater limitations due to her Sjogren's syndrome than those reflected in the ALJ's RFC, and the ALJ erred by discounting her testimony based on inconsistencies with the medical record, her decision to decline treatment through medication, and her daily activities.

### C. Objective Medical Records

The Court first addresses the ALJ's discussion of objective medical records. The ALJ relied on a November 13, 2020, Sleep Apnea Assessment by nurse practitioner Christopher Guiley ("NP Guiley") (AR at Exh. 12F)) to undermine the severity of Plaintiff's claimed physical and mental symptoms of fatigue. (*Id*. at 21). The ALJ cited to Plaintiff's sleep questionnaire therein, where she indicated to NP Guiley that she had a moderate chance of dozing when lying down to rest, and would never doze off in

circumstances where falling asleep wasn't appropriate. (*Id*. at 21). The ALJ adopted NP Guiley's recommendation in the RFC that Plaintiff should "avoid operating any motor vehicles or machinery, or participating in hazardous activities if at all sleepy" but emphasized that there were "no other concerns regarding activity restriction associated with fatigue" in his assessment (*Id*.) The ALJ further noted the NP Guiley recorded Plaintiff's reports that she had "a little" difficulty concentrating and remembering things, but found that " 'a little' does not suggest true functional limitation." (*Id*.) The ALJ also acknowledged that while Plaintiff's June 13, 2020 and December 15, 2020, Function Reports (*id*. at Exhs. 4E; 9E) (the "2020 Function Reports") reported her "alleged fatigue contributed to periodic memory and concentration lapse," the overall impression was that Plaintiff had "no more than mild impairment in mental functioning and no true functional limitation in her basic mental work abilities." (*Id*. at 21). Last, the ALJ provided a detail summary of the January 22, 2021, Assessment by Caroline McCulley M.D. ("MD McCulley) through (*id*. at Exh. 11F), noting various normal findings on Plaintiff's Sjogren's syndrome, including: no acute distress; no cervical supraclavicular lymphadenopathy; no significant tenderness or synovitis in Plaintiff's fingers, hands, wrists, or elbow; full range of motion in shoulders; normal flexion and extension in knee with no effusions; no significant pain with hip rotation; no abnormal rashes; and no end-organ involvement. (*Id*. at 22 (citing Exh. 11F)).

The Commissioner argues the ALJ adequately identified areas in the medical record that were inconsistent with Plaintiff's testimony of severe fatigue. (Doc. 13 at 8–11). The Commissioner further contends the ALJ properly relied on the November 13, 2020, Sleep Apnea Assessment, 2020 Function Reports, and January 22, 2021, Assessment because "the record shows little evidence of medical evaluations of Plaintiff's Sjogren's syndrome prior to her date last insured of September 30, 2020" and allegations of her fatigue only began in October 2020, which is after the Intervening Timeframe. (*Id*. at 8). Plaintiff disagrees, citing to a series of records that evaluated her complaints of fatigue since September 2019. (Docs. 14 at 3; 11 at 8–9). Plaintiff contends the ALJ failed to discuss

these records, which are relevant to her RFC during the Intervening Timeframe and otherwise consistent with her testimony. The Commissioner rebuts that although these treatment notes show a diagnosis of Sjogren's syndrome, they "provide no information of how this condition affected Plaintiff's functional abilities. (Doc. 13 at 8). The Court agrees with Plaintiff.

To start, the ALJ erred when relying on the absence of evidence corroborating Plaintiff's claims of severe fatigue to justify the conclusion that Plaintiff's testimony was inconsistent with the record. The ALJ emphasized that the November 13, 2020 Sleep Apnea Assessment indicated "no other concerns regarding activity restriction associated with fatigue," that Plaintiff's Function Reports signaled "no more than mild impairments in mental functioning due to fatigue," and that the Patient Chart established normal findings with respect to Plaintiff's Sjogren's syndrome. But an ALJ may not "reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of [an impairment]" because "testimony may establish greater limitations than can medical evidence alone. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (citing Social Security Ruling (S.S.R.) 96–7p (1996)). Nor can an ALJ "effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence fully corroborating every allegation within the subjective testimony." *Smartt*, 53 F.4th at 495. To the contrary, the medical records cited to by the ALJ confirmed Plaintiff's complaints of fatigue. For example, the purpose of the November 13, 2020, Sleep Apnea Assessment was to "to rule out obstructive sleep apnea as a *potential cause* contributing to her excessive fatigue over the past year" (AR at 721) (emphasis added); (*see also id*. at 721 ("Chief Complaint: Fatigue"), 728 (indicating Plaintiff as a "62-year-old female with Sjogren's syndrome and morbid obesity (weight 244 pounds-BMI 40.6), has snoring, witnessed apneas, insomnia and chronic fatigue"); 745 ("[Plaintiff] continues to have excess fatigue")).

Moreover, the Commissioner's position that Plaintiff's fatigue only began in October 2020—after the Intervening Timeframe—is inaccurate. Plaintiff raises that

Jessica Morgan M.D. ("Dr. Morgan") first assessed her with myalgia, myositis, and fatigue in September 2019 (*id*. at 496–97), and later connected those symptoms with Sjogren's syndrome in April 2020 (*id*. at 438). This connection was made after Heather Hansen-Dispenza, M.D. ("Dr. Hansen-Dispenza") diagnosed Plaintiff in November 2019 with primary Sjogren's syndrome accompanied by high titer autoantibodies, leukopenia, sicca, myalgias, fatigue, and inflammatory arthritis symptoms. (*Id*. at 348). The Commissioner acknowledges Dr. Hansen-Dispenza's diagnoses, but contends there were no treatment notes further explaining how this condition affected Plaintiff's functional abilities. (Doc. 13 at 8). But as explained above, the absence of fully corroborating evidence is not a proper basis for finding Plaintiff's testimony inconsistent with the overall record. *See Burch*, 400 F.3d at 681; *see Smartt*, 53 F.4th at 495. The objective medical record shows Plaintiff continued to see Dr. Morgan for excessive fatigue and muscle fatigue during the Intervening Timeframe from March–November 2020. (AR at 444 (noting "extra symptoms of myalgia and fatigue"), 438 (same), 430, (same), 425 (same), 633 (same)). And although the ALJ cited to Dr. Morgan's November 2020 assessment notes in passing (*See id*. at 22 (citing Exh. 15F)), the ALJ did not engage in any discussion of the relevant assessments made during the Intervening Timeframe when discounting Plaintiff's symptom testimony.

In sum, the Court finds the ALJ's failed to set forth clear and convincing reasons for her conclusion that Plaintiff's testimony was inconsistent with the medical record. However, for the reasons discussed *infra*, that error was harmless and the ALJ's decision will still be upheld. *See Molina*, 674 F.3d at 1115 (An error is harmless if there remains substantial evidence supporting the ALJ's decision, and the error does not affect the ultimate no disability determination).

### D.    Plaintiff's Decision to Stop Treatment

The Court proceeds to consider the ALJ's discussion of Plaintiff's efforts to seek treatment for her Sjogren's syndrome. The Commissioner contends the ALJ properly found Plaintiff's decision to decline medication contradicted the extent of her alleged

fatigue and myalgia. (Doc. 13 at 11–13). The Commission argues Plaintiff's ability to manage her symptoms with lifestyle changes alone implies the severity of her symptoms did not prevent her from performing sedentary work. (*Id*. at 13). Plaintiff opposes, arguing her lymphoma justifies her decision not to take immunosuppressant for treatment. (Doc. 11 at 3).

The Social Security Regulations provide that "if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints . . . we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." S.S.R. 16-3p. Indeed, an ALJ may consider a claimant's "failure to seek treatment or to follow a prescribed course of treatment" in discrediting her symptom testimony. *Molina*, 674 F.3d at 1112 (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010)). "[A]n unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" may serve as a sufficient reason for an adverse credibility determination. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (citing 20 C.F.R. § 404.1530(c) (1988)); *see also Burch*, 400 F.3d at 681 (holding that a claimant's failure to seek treatment for back pain, depression, and fatigue was "powerful evidence" regarding the extent of her conditions). However, an ALJ "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *Wilmot v. Comm'r of Soc. Sec. Admin.*, 2022 WL 18810954, *5 (D. Ariz. Nov. 17, 2022), *report and recommendation adopted*, 2023 WL 2140483 (D. Ariz. Feb. 21, 2023) (quoting S.S.R. 16-3p).

Here, the ALJ concluded that Plaintiff's efforts to seek treatment for her myalgias did not support her testimony regarding difficulty sitting, standing, walking, and using her hands. (AR at 20, 22). The ALJ relied on Dr. McCulley's May 21, 2021, Assessment (*id*. at Exh. 14F), which stated that Plaintiff's aches and pains were tolerable while she was on meloxicam. (AR at 22). Plaintiff, however, expressed she wished to avoid

"unnecessary" medication out of concern for her liver and kidneys, and opted to focus on healthy lifestyle changes in lieu of medication. (*Id*.) In light of Plaintiff's decline, the ALJ reasoned that Plaintiff's pain level did not require management by medication. (*Id*.) The ALJ further found Plaintiff's symptom testimony lacked credibility because her Sjogren's syndrome has not required aggressive therapy, has not involved end organ involvement, and entailed treatments focused on symptom management. (*Id*. at 22). The ALJ also cited to instances in the medical record showing that Plaintiff's Sjogren's syndrome symptoms improved while taking Plaquenil (hydroxychloroquine) (*id*. at 20 (citing Exhs. 1A; 4A)), yet Plaintiff similarly decided to wean off medication (*id*. at 343, 349, 356).

The ALJ's conclusion that Plaintiff's decision to stop treatment through Plaquenil and meloxicam undermined the severity of her claimed fatigue and myalgia is supported by substantial evidence. The medical record shows that Plaintiff benefitted from Plaquenil and meloxicam. (*Id*. at 288 (["Plaintiff's] fatigue is lifting since starting the Plaquenil"), 785 ("[Plaintiff w]as taking meloxicam for straight 6 wks initially, felt it was working pretty well"). The ALJ noted that Plaintiff opted to "stop taking the medication all together out of unspecified concerns for her liver and kidneys" and characterized the medication as "unnecessary." (*Id*. at 22). Thus, the Court finds the ALJ considered Plaintiff's reasons for stopping medication, and adequately explained why it contradicted her symptom testimony. *See Burch*, 400 F.3d at 681. Plaintiff indeed testified at the hearing that she was not taking any medication for her Sjogren's syndrome, and she declined knowing any medical reason why she cannot take immunosuppressants. (*Id*. at 44, 49). Therefore, the ALJ's decision to discount Plaintiff's symptom testimony in light of her decision to stop taking medication to manage her symptoms of Sjogren's syndrome is supported by substantial evidence. *See Molina*, 674 F.3d at 1112.

### E.     Daily Activities

Last, the Court turns to the ALJ's discussion of Plaintiff's daily activities. A plaintiff's ability to carry out "daily activities may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits

involving the performance of physical functions that are transferable to a work setting." *Orn*, 495 F.3d at 639 (internal quotations and citations omitted). "The ALJ must make 'specific findings relating to the daily activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Id*. (quoting *Burch*, 400 F.3d at 681). There are two grounds for using daily activities to form the basis of an adverse credibility determination: (1) when the plaintiff's described activities contradict his other testimony; and (2) when the plaintiff's activities "meet the threshold for transferable work skills." *Id*. (citing *Fair*, 885 F.2d at 603); *see also Molina*, 674 F.3d at 1113 ("Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment").

> The ALJ summarized Plaintiff's activities as follows:
>
> [Plaintiff] can perform simple household chores by spreading tasks out and she can pay attention for two hours at a time. She prepares meals, pays bills and manages funds, takes medications, shops in store and by mail, attended church until "the quarantine" and the unique circumstances of the COVID-19 pandemic, goes to the gym where she has a group of friends she used to go for long walks with, stays in touch with family, and cares for her husband and dog (Exhibit 4E).
>
> . . . .
>
> The claimant testified she only recently stopped boarding dogs in the summer of 2021 because she could no longer walk them. This suggests she was able to walk the dogs (which she boarded one at a time) and otherwise provide care, for most of the period since her alleged onset date. In addition, she testified she continues to go to the gym, although she cannot do as much as she used to, and has had a "couple" trips to Arizona and the coast since the alleged onset of disability.

(AR at 21–22). The ALJ concluded that Plaintiff's "testimony regarding boarding dogs, and travel suggested her fatigue would not interfere with her ability to stay on task in a sit-down job." (*Id*. at 21). Plaintiff argues the ALJ's conclusion is not supported by substantial evidence because "these sporadic activities, on their face, even as the ALJ described

- 14 -

them, do not demonstrate that she can work 8 hours a day, 5 days a week." (Doc. 11 at 12). The Court disagrees.

The ALJ sufficiently articulated her reasonings for why Plaintiff's activities undermined credibility of her alleged fatigue. The ALJ explained that Plaintiff's ability to walk and provide care for dogs as part-time work during the Intervening Timeframe suggest her chronic fatigue was not as severe as she claimed. This finding is supported by substantial evidence because the ALJ noted how the activities were contrary to Plaintiff's symptom testimony and entailed skills that were transferrable to work functions. *See Orn*, 495 F.3d at 639. And, despite Plaintiff's contention, Plaintiff's part-time business of boarding dogs during the Intervening Timeframe cannot be considered sporadic. The Court therefore finds the ALJ's adverse credibility determination was supported by substantial evidence. *See Burch*, 400 F.3d at 681.

## V. Conclusion

Because the ALJ's set forth clear and convincing reasons for discounting Plaintiff's testimony of fatigue and myalgias based on her medical treatment and daily activities, the Court further finds the RFC adequately reflected the total limiting effects of Plaintiff's impartments due to her Sjogren's syndrome. Indeed, the RFC accounted for Plaintiff's fatigue by limiting her to sedentary work and adopting NP Guiley's recommendation that she "avoid operating any motor vehicles or machinery, or participating in hazardous activities if at all sleepy" (AR at 19, 21). The Court will therefore affirm the November Decision.

Accordingly,

**IT IS ORDERED** that the Administrative Law Judge's November 23, 2021, decision is **affirmed**.

/ / /
/ / /
/ / /
/ / /

1   **IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to enter judgment accordingly and terminate this action.

Dated this 29th day of March, 2024.

_____
Honorable Diane J. Humetewa
United States District Judge